<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :        Chapter 13
In re:                                               :
                                                     :        Case No. 13-36564   (CGM)
        Bryan Starling,                              :
                                                     :
                                    Debtor.          :
                                                     :
------------------------------------------------------------X

<u>**MEMORANDUM DECISION FINDING THAT THE INTERNAL REVENUE SERVICE
AND CONSERVE SERVICE GROUP, INC. VIOLATED THE DISCHARGE
INJUNCTION PURSUANT TO 11 U.S.C. § 524**</u>

**A P P E A R A N C E S :**

Brian C. Fetzko
Fetzko Law Offices, P.C.
12 Evergreen Drive, Suite 102
Middletown, NY 10940
*Attorney for the Debtor*

Alexander J. Hogan
Assistant United States Attorney
Office of U.S. Attorney Geoffrey S. Berman for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
*Attorney for the Internal Revenue Service (IRS)*

Thomas J. Gaffney
Brendan H. Little
50 Fountain Plaza, Suite 1700
Lippes Mathias Wexler Friedman LLP
Buffalo, NY 14202
*Attorneys for Continental Service Group, Inc. (ConServe)*

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

In 2016, Bryan Starling ("Debtor") was granted a discharge of his personal liability on all of his non-excepted debt, including debts owed to the Internal Revenue Service ("IRS"). Years following the entry of the discharge order, the IRS through its servicer, Continental Service Group, Inc. d/b/a ConServe ("ConServe"), served two notices on the Debtor in an attempt to collect tax debt from the 2002 tax year. Now pending before the Court is Debtor's Motion for Contempt for Violation of Discharge Injunction (the "Motion for Contempt," ECF No. 44) seeking to impose sanctions against the IRS and ConServe for attempting to collect Debtor's tax debt from the 2002 tax year. For the reasons set forth in this Memorandum Decision, the Debtor's motion for contempt is granted.

## **Background**

Prior to filing, Debtor owed the IRS monies for unpaid taxes. Motion for Contempt at 13. After providing Debtor with a series of notices, on June 5, 2005, the IRS assessed a tax against Debtor for the 2002 tax year. *See* Declaration of Karen Burke ¶ 12, ECF No. 47-1. On August 28, 2007, the Debtor filed a Form 1040 individual tax return for the 2002 tax year. *Id.* ¶ 13. Approximately six years later, on July 3, 2013, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Vol. Pet., No. 13-36564-cgm, (Bankr. S.D.N.Y. July 3, 2018), ECF No. 1.

On July 15, 2013, after receiving notice of Debtor's petition for relief, the IRS filed a proof of claim against Debtor for unpaid taxes totaling $44,581.59. *See* Claim No. 1-1. On December 11, 2013, the IRS filed a second amended proof of claim reducing the amount of its claim from $44,581.59 to $22,604.03 for the tax periods ending in 2002, 2003, 2005, 2006, 2007, and 2008 ("Second Amended Claim"). *See* Claim No. 1-3 at 3. Of the $22,604.03 owed in the Second Amended Claim, $21,312.05 was designated by the IRS as general, unsecured debt for

the tax periods ending in 2002, 2003, 2005, 2006, and 2007, while the remaining $1,291.98 was designated as priority, unsecured debt for the tax period ending in 2008.  *Id.*

On February 11, 2014, the Court entered an "Order Confirming Chapter 13 Plan" which ordered the Debtor to make thirty-six (36) payments of $62.00 each month, from August 3, 2013 through July 3, 2016.  ECF No. 30 at 1.  On May 19, 2016, after Debtor completed plan payments, a discharge order was entered by the Court ("Discharge Order").  ECF No. 36.  On May 21, 2016, the notice of the discharge was sent to all interested parties, including the IRS.  ECF No. 37.

The Chapter 13 Standing Trustee's Final Report and Account provides that the IRS' priority claim of $1,291.98 was paid in full by the Debtor's estate; and the IRS' non-priority, unsecured claims were paid their pro-rata share, in the amount of $386.70.  ECF No. 39 at 2-3.

Debtor received a notice, dated November 6, 2017, from the IRS stating that his debt from the tax year ending in 2002 was assigned to ConServe, a private collection agency.  Mot., Ex. H, ECF No. 34-13.  Immediately thereafter, Debtor mailed a letter to the IRS dated November 8, 2017 explaining the automatic stay and a demand that "[a]ll attempts to collect monies from the debtor must cease immediately."  Mot., Ex. I at 1, ECF No. 34-14.

Thereafter, the IRS, through its servicer ConServe, sent the Debtor an "Annual Tax Delinquency" two additional notices seeking payment for Debtor's 2002 tax debt on November 7, 2018 and November 7, 2019.  *See* Mot., Ex. J, ECF No. 44-14.

The IRS ceased its collection activity of this 2002 tax debt on November 22, 2019, pursuant to 26 U.S.C. § 6502, which sets forth the length of time during which the IRS may collect on an assessment.  Burke Decl. ¶ 14, Opp., Ex., ECF No. 47-1.

Before the Court is Debtor's Motion for Contempt seeking to hold the IRS and Conserve in contempt for violating the discharge injunction. Debtor asks the Court to enter an order finding that the IRS and ConServe willfully violated the Debtor's Discharge Injunction, pursuant to 11 U.S.C. § 524, an award of compensatory damages, reasonable attorney's fees, and punitive damages in the sum of $10,000.00. Mot. at 3, ECF No. 44.

The IRS opposes the motion and argues: 1) that this Court lacks subject matter jurisdiction to hear this dispute because the Debtor has failed to exhaust his administrative remedies; and 2) that, even if there is subject matter jurisdiction to hear this dispute, the tax debt was not discharged in Debtor's bankruptcy case. Opp., ECF No. 47.

Debtor filed a response arguing that sovereign immunity does not apply to actions brought to enforce the discharge injunction and that the Debtor's 2002 Form 1040 qualifies as a "return" under 11 U.S.C. § 523(a), entitling the Debtor to discharge the debt. Resp., ECF No. 48.

ConServe filed its own opposition incorporating the IRS' arguments that ConServe did not violate this Court's Discharge Order. *See* ConServe Opp., ECF No. 50.

## Discussion

This dispute between Debtor and the IRS raises a multitude of legal issues. Ultimately, the Court must determine whether the IRS and ConServe violated the discharge injunction. The Court will first address the IRS' argument that this Court does not have subject matter jurisdiction to hear and determine this motion and whether sovereign immunity prevents the Debtor from bringing this motion against IRS and ConServe.

**I.   Whether Sovereign Immunity bars this action against the IRS and ConServe?**

The doctrine of sovereign immunity bars lawsuits against the United States, or its agencies, in the absence of consent as expressly manifested by Congress.  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-36 (1992) (stating that for the government's waiver of sovereign immunity to be effective, it must be "unequivocally expressed").  "Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant."  *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998).

**A.   Whether the Court has Subject Matter Jurisdiction to Hear and Determine this Issue?**

The IRS argues that § 7433 of the Internal Revenue Code ("IRC") limits this Court's subject matter jurisdiction.  It does not.  This Court's federal subject matter jurisdiction is governed by 28 U.S.C. § 1334, which provides district courts exclusive jurisdiction over "all cases under title 11" and non-exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b), and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2) (A) ("matters concerning the administration of the estate") and (I) ("determinations as to the dischargeability of particular debts").

The power of the Bankruptcy Court to hear and determine such actions is codified in the IRC.  *See* 26 U.S.C. § 7433(e) ("If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or any regulation promulgated under

such provision, such taxpayer ***may petition the bankruptcy court to recover damages*** against the

United States.") (emphasis added). Section 7433(e)(2)(A) goes on to state that a petition made to

the bankruptcy court is the "***exclusive remedy***" for a violation of the bankruptcy discharge. *See*

26 U.S.C. § 7433(e)(2)(A) (emphasis added).

Nothing in IRC § 7433 deprives this Court of its subject matter jurisdiction to hear and

determine whether a discharge violation occurred. *Kuhl v. United States (In re Kuhl)*, 467 F.3d

145, 147 (2d Cir. 2006). Section 7433 specifically states that the Bankruptcy Court is the forum

for bringing actions such as this. *See* 26 U.S.C. § 7433(e)(1). This is consistent with § 106(a)[1]

of the Bankruptcy Code, which provides "notwithstanding an assertion of sovereign immunity,

sovereign immunity is abrogated as to a government unit to the extent set forth in this section

with respect to . . . [s]ections . . . 505 . . . 523, 524 . . . of this title." 11 U.S.C. §106(a)(1).

Notably, among them are the sections provided in section 106 of the Bankruptcy Code, §§ 505

("Determination of Tax Liability"); 523 ("Exceptions to discharge") and 524 ("Effect of

discharge"). Section 106(a)(2) goes on to state that "[t]he court may hear and determine ***any***

***issue*** arising with respect to the application of such sections to governmental units." 11 U.S.C. §

106(a)(2) (emphasis added).

Section 106(b) lends further support for Debtor's argument that the IRS may be sued in

this Court. 11 U.S.C. § 106(b). The IRS filed a proof of claim against the Debtor. *See* Claim

No. 1 (filed July 15, 2013 and amended Sept. 9, 2013 and Dec. 11, 2013). Section 106(b) states:

"[a] governmental unit that has filed proof of claim in the case is deemed to have waived

---

[1] "Section 106 was amended by the Bankruptcy Reform Act of 1994 in order to make clear Congress's intent to
abrogate sovereign immunity of governmental units with respect to actions for damages as well as declaratory and
injunctive relief under specified Bankruptcy Code provisions. The amendment was intended to overrule two
Supreme Court decisions, *Hoffman v. Connecticut Department of Income Maintenance*[, 492 U.S. 96 [1989] and
*United States v. Nordic Village, Inc.*[, 503 U.S. 30 (1992)], which held that former section 106(c) did not state with
sufficient clarity a congressional intent to abrogate the sovereign immunity of the states and the federal
government." *See* 2 Collier on Bankruptcy ¶ 106.01 (16th ed. 2020) (citing Pub. L. No. 103-394).

sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or concurrence out of which the claim of such governmental unit arose."

Having satisfied itself that this Court has subject matter jurisdiction to hear and decide Debtor's motion to determine whether a discharge violation has occurred, the Court turns next to whether IRC § 7433 prevents this Court from hearing Debtor's request for damages.

### B. Whether IRC § 7433 Conflicts with 11 U.S.C. § 106 on the Issue of Damages Assessed Against the IRS?

At the hearing held on April 28, 2020, the IRS argued that without having exhausted administrative remedies, Debtor is prevented seeking an award of damages from the IRS by the doctrine of sovereign immunity.  The IRS asserts that the damages a Bankruptcy Court may award are limited by IRC § 7433(b)[2] in conjunction with subsection (d), which states that "[a] judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."  *See Hoogerheide v. IRS*, 637 F.3d 634, 637 (6th Cir. 2011) (stating IRC § 7433 "provides a limitation on an 'award' of a 'judgment for damages,' . . . not on the federal courts' jurisdiction"); *Nicolson v. IRS*, 2015 WL 6152922, at *3 (N.D. Fl. Sept. 15, 2015) (explaining that IRC § 7433 imposes a precondition to an award of damages).  A bankruptcy court retains the authority to sanction the IRS for contempt.  *Id.*

---

[2] In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—
(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and
(2) the costs of the action.

In response, Debtor argued that sovereign immunity has been abrogated by Congress, and if not, the IRS waived its immunity by filing a proof of claim and participating in this Debtor's chapter 13 case.  Section 106(a)(3) provides:

> [t]he court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, ***including an order or judgment awarding a money recovery***, but not including an award of punitive damages. Such order or judgment for cost or fees under this title of the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

11 U.S.C. § 106(a)(3) (emphasis added).  Section 106(a)(3) "abrogate[s]" sovereign immunity against "governmental unit[s]" without the condition that a debtor must exhaust administrative remedies prior to bringing a motion for damages.

Section 7433 of the IRC prohibits an action against the IRS for damages associated with a violation of the discharge injunction, unless administrative remedies are exhausted, while § 106 of the Bankruptcy Code allows such actions outright.  *Compare* 26 U.S.C. § 7433 *with* 11 U.S.C. § 106.  In its decision interpreting IRC § 7433, the Court of Appeals for the Second Circuit held that a taxpayer must exhaust administrative remedies under IRC § 7433 and § 7430 prior to petitioning the bankruptcy court for damages.  The bankruptcy court's decision that the tax debt was discharged and that the exceptions to discharge under 11 U.S.C.§ 523(a)(1)(B) did not apply was undisturbed.  *See id.* ("Congress has conditionally waived sovereign immunity for the IRS's willful violation of such a discharge: after exhausting administrative remedies, the taxpayer may petition the bankruptcy court for damages."); *see also Kuhl v. United States. (In re Kuhl)*, 2005 WL 8146346, at *2 (E.D.N.Y. Aug. 16, 2005) ("Whether the bankruptcy court has jurisdiction to award ***damages*** is a question of law, and therefore, reviewed de novo.") (emphasis added).  The Court of Appeals held that a taxpayer's "failure to exhaust her administrative remedies ***in pursuit***

*of attorneys' fees* deprives this Court of jurisdiction over her claim." *Kuhl v. United States (In re Kuhl)*, 467 F.3d 145, 149 (2d. Cir. 2006) (emphasis added). Unfortunately, *Kuhl* did not consider 11 U.S.C. § 106, on which the Debtor relies, and which appears to conflict with 26 U.S.C. § 7433 on how and when a bankruptcy debtor may assert a claim for fees and damages against the IRS.

When considering an "alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute," a court must rely on "traditional rules of statutory interpretation," including through the analysis of the statutory text and established principles of interpretation. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 111-12 (2014). If the court finds an "irreconcilable conflict," the later act constitutes an implied repeal of the earlier one. *Johnson v. Midland Funding*, 823 F.3d 1334, 1340 (11th Cir. 2016) (quoting *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."). "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (internal quotations omitted); *see also Posadas*, 296 U.S. at 503 ("But . . . the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment."). "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (internal quotations omitted). The Court went on to explain that:

> The reason and philosophy of the rule is, that when the mind of the
> legislator has been turned to the details of a subject, and he has
> acted upon it, a subsequent statute in general terms, or treating the
> subject in a general manner, and not expressly contradicting the
> original act, shall not be considered as intended to affect the more
> particular or positive previous provisions, unless it is absolutely
> necessary to give the latter act such a construction, in order that its
> words shall have any meaning at all.

*Id.*  It is a cardinal rule of statutory construction that when two federal statutes address the same subject, courts must try to give effect to both.  *United States v. Borden Co.*, 308 U.S. 188, 198 (1939).

Of the two statutes at issue here, the more specific is IRC § 7433, which regulates discharge violations committed by officers or employees of the IRS.  *See* 26 U.S.C. § 7433. Given the Supreme Court's directive that this Court must try to interpret each statutes in order to give effect to both apparently conflicting statutes, this Court holds that in order for the bankruptcy court to award a "judgment for damages" against the IRS, a taxpayer must exhaust administrative remedies as required under IRC § 7433.

In this case, the IRS argues that the Debtor has failed to exhaust his administrative remedies.  IRS Opp. ¶ 27, ECF No. 47.  While Debtor did send a letter to the Commissioner of the IRS advising that Debtor's discharge was violated, the letter did not qualify as an exhaustion of administrative remedies.[3]  *See* Mot., Ex. I, Ltr. to IRS dated Nov. 8, 2017, ECF No. 44-14. Debtor's letter did not contain "[t]he dollar amount of the claim, including any damages that

---

[3] 26 C.F.R. § 301.7430-1(e) governs the exhaustion of administrative remedies for actions involving willful violations of the discharge injunction under § 524 of the Bankruptcy Code.  The Treasury Regulation provides: "A party has not exhausted administrative remedies within the Internal Revenue Service with respect to asserted violations of the automatic stay under section 362 of the Bankruptcy Code or the discharge provisions under section 524 of the Bankruptcy Code unless it files an administrative claim for damages or for relief from a violation of section 362 or 524 of the Bankruptcy Code with the Chief, Local Insolvency Unit, for the judicial district in which the bankruptcy petition that is the basis for the asserted automatic stay or discharge violation was filed pursuant to § 301.7433–2(e) and satisfies the other conditions set forth in § 301.7433–2(d) prior to filing a petition under section 7433."

have not yet been incurred but which are reasonably foreseeable" as required by 26 C.F.R. §

301.7433-2(e).  *Id.*

Debtor has not contested the IRS' allegation that he failed to exhaust his administrative

remedies.  Resp., ECF No. 48.  As such, no damages will be issued against the IRS.

### C.  Whether IRC § 7433 is Applicable to ConServe?

In addition to the IRS, Debtor has moved for sanctions against ConServe for its violation

of the discharge injunction.  "ConServe is a contractor for the [IRS]."  Mot., Ex. J., Ltr. to Debtor

from ConServe dated Nov. 6, 2018, ECF. No. 44-15.  ConServe is a "private collection agency"

that the IRS contracted with to assist it "in collecting certain overdue federal taxes."  Mot., Ex.

H, Ltr. to Debtor from IRS dated Nov. 6, 2017, ECF No. 44-13.  As a private contractor,

ConServe is not afforded the same protections as the IRS for violations of the discharge

injunctions.  *See* 26 U.S.C. § 7433A.

Section 7433A(b)(4) of the IRC permits taxpayers to bring actions for damages against

contractors that violate the discharge injunction.  26 U.S.C. § 7433A(b)(4) ("Subsections (c),

(d)(1), and (e) of section 7433 shall not apply [to actions brought against contractors].").

ConServe is not protected by IRC § 7433; IRC § 7433 is not an exclusive remedy for

discharge violations committed by contractors; and Debtor did not need to exhaust administrative

remedies before bringing an action for damages against ConServe.  *Id.*

### II.  Whether the Debtor's 2002 Tax Debt was Discharged in his Chapter 13 Case?

Even though the Court cannot issue an award of damages against the IRS, the Court

retains jurisdiction to hold the IRS in contempt of its order of discharge and can issue damages

against ConServe for any discharge violations it has committed.

There is no dispute that Debtor filed his 1040 form on August 28, 2007, which was almost six years prior to the bankruptcy filing date of July 3, 2013. Prior to that, on September 26, 2005, the Secretary issued a Substitute for Return for the Debtor, pursuant to IRC § 6020(b). All parties agree that whether the discharge injunction was violated depends solely on whether the Debtor's Form 1040, which was filed after the IRS had prepared a Substitute for Return and assessed his tax liability, constitutes a "return" for purposes of § 523(a)(1)(B). The IRS and ConServe contend that each could collect the Debtor's tax debt without penalty as this debt is nondischargeable, under section 523(a)(1). Debtor disagrees and argues that the Form 1040 is a "return" as defined under § 523(a).

Section 523(a)(1)(B)(ii) states that

> [a] discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt— for a tax . . . with respect to which a return, or equivalent report or notice, if required— was filed or given after the date on which such return, report, or notice was law due, under applicable law or under any extension, and after two years before the date of the filing of the petition.

Prior to enactment of the BAPCPA in 2005, the term "return" was undefined by the Bankruptcy Code. As a result, many courts adopted the test developed by the tax court in *Beard v. Commissioner* to determine what constitutes a tax "return" for purposes of § 523(a)(1)(B). 82 T.C. 766 (1984), *aff'd per curiam*, 793 F.2d 139 (6th Cir.1986). Under *Beard*, a document qualifies as a return when: (1) it purported to be a return; (2) was signed under the penalty of perjury; (3) contained information sufficient to determine tax liability; and (4) was an honest and reasonable attempt to satisfy the tax law requirements. *Beard v. Commissioner*, 82 T.C. 766, 777 (1984). Most commonly, parties argued over the fourth prong of *Beard*, which requires an honest and reasonable attempt by the taxpayer to satisfy tax law requirements. The majority of pre-BAPCPA cases held that a late filed tax return, by virtue of its being late, could never qualify

as an "honest and reasonable attempt" to satisfy tax law. *See In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005) ("[T]he belated filing was not a reasonable effort to satisfy the requirements of the tax law."); *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905 (4th Cir. 2003) ("We hold then that income tax forms unjustifiably filed years late, where the IRS has already prepared substitute returns and assessed taxes, do not constitute "returns" for purposes of 11 U.S.C. § 523(a)(1)(B)(i)."); *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033–34 (6th Cir.1999) ("We conclude that if a document purporting to be a tax return [such as a Form 1040] serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law."). *But see In re Colsen*, 446 F.3d 836, 840 (8th Cir. 2006) (stating that the "fourth *Beard* criterion contains no mention of timeliness or the filer's intent" and instead looking to the "face of the form itself" to determine the "honesty and genuineness of the filer's attempt to satisfy tax laws" and not applying BAPCPA as the law was not in effect at the time the underlying bankruptcy case was filed).

In 2005, as part of BAPCPA, Congress attempted to clarify the meaning of "return" by adding a "hanging paragraph" to § 523(a).[4] *See In re Martin*, 508 B.R. 717, 724 (Bankr. E.D. Cal. 2014). The hanging paragraph of § 523(a) states

> [f]or purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

---

[4] The Court will refer to the hanging paragraph as § 523(a)(*) for clarity's sake.

11 U.S.C. § 523(a)(*).  Section 6020 of the IRC deals with returns prepared by the Secretary

after a person has failed to file a return.  Subsection (a) refers to voluntary returns; that is, returns

prepared by the Secretary with consent and cooperation of the taxpayer.  26 U.S.C. § 6020(a).

Subsection (b) relates to "involuntary returns" or returns made by the Secretary without input

from the taxpayer.  *See* 26 U.S.C. § 6020(b).  A Secretary created return is sometimes referred to

by the IRS as a "Substitute for Return."

Instead of resolving the Circuit split, the definition of "return" contained in 11 U.S.C. §

523(a)(*) has created more uncertainty.  Some courts have interpreted this additional paragraph

as Congress' abrogation of the *Beard* test and creation of a bright-line rule in its place.  *See*

*Fahey v Mass. Dept. of Rev.* (*In re Fahey*), 779 F.3d 1, 11 (1st Cir. 2015) ("[I]t is more plausible

that Congress intended to settle the dispute over late filed tax returns against the debtor (who

both fails to pay taxes and fails to file a return as required by law) than it is that Congress sought

to preserve some version of the unsettled four-pronged *Beard* test . . . ."); *Casano v. IRS (In re*

*Casano)*, 473 B.R. 504, 507 (Bankr. E.D.N.Y. 2012) (applying a bright-line rule that post-

assessment Forms 1040 can never constitute a "return" for bankruptcy purposes, under the

hanging paragraph and IRC § 6020(b)).

Other courts have continued applying *Beard* under the "applicable nonbankruptcy law"

prong of § 523(a)(*).  *See Mallo v. United States (In re Mallo)*, 498 B.R. 268, 281 (D. Colo.

2013) (adopting *Hindenlang* version of *Beard* Test as the "applicable nonbankruptcy law");

*Rhodes v. United States (In re Rhodes)*, 498 B.R. 357, 369 (Bankr. N.D. Ga. 2013) (determining

late filed returns fit into the definition of "return" and adopting *Colsen*'s interpretation of *Beard*

test); *In re Briggs*, 511 B.R. 707, 713 (Bankr. N.D. Ga. 2014) (determining late filed returns fit

into the definition of "return" and applying *Beard*); *Biggers v. IRS*, 557 B.R. 589 (M.D. Tenn.

2016) ("[T]he Court concludes that the determination of the fourth prong of *Beard* is a subjective test that allows for circumstances in which there can be an honest and reasonable attempt to comply with the tax law even after assessment by the IRS and even when untimely forms do not report additional tax liability.").

A recent case by the Court of Appeals for the Eleventh Circuit held that late filed returns qualify as "returns" without applying *Beard*. *See Mass. Dept. of Rev. v. Shek (In re Shek)*, 947 F.3d 770, 781 (11th Cir. 2020) ("[A] late-filed tax return does not automatically cease having the status of a 'return' merely because it was filed late."); *see also Maitland v. N.J. Div. of Tax*, 531 B.R. 516 (Bankr. D.N.J. 2015) (declaring a late-filed return meets the definition of a "return" without applying the *Beard* test); *Martin v. IRS*, 508 B.R. 717 (Bankr. E.D. Cal. 2014) (concluding that late Form 1040 tax returns were "returns" within the meaning of § 523(a)(1)(B)(i) and § 523(a)'s hanging paragraph). The Court of Appeals for the Eleventh Circuity did not address whether the *Beard* test would continue to apply. *See Shek*, 947 F.3d at 780-81. The Court of Appeals for the Second Circuit has not weighed in on this issue.

This Court now follows those courts that have continued to apply *Beard* post-BAPCPA. Despite what some courts say, the hanging paragraph of § 523(a)(*) does not contain a bright line test that eliminates post-assessment returns. Rather, that paragraph defines a return as something that "satisfies the requirements of nonbankruptcy law." § 523(a)(*). It goes on to give examples of what is or is not included. Excluded from the definition of "return" under § 523(a)(*) is a Substitute for Return, prepared by the Secretary, pursuant to IRC § 6020(b). Neither the Debtor nor the IRS is asking this Court to determine whether the Substitute for Return filed by the IRS on September 26, 2005, meets the definition of "return" in § 523(a)(*); it does not. *See In re Rhodes*, 498 B.R. 357, 365 (N.D. Ga. 2013) ("The Court concludes that the

"carve-out" language of § 523(a)(*) that excludes a 'substitute return' that the IRS filed from the definition of "return" does no more than that. It prevents a debtor from claiming that a return was filed when only the taxing authority did so. The carve-out language does not apply to exclude a tax return that the debtor files after the IRS has filed a substitute return.").

Debtor is asserting that his post-assessment Form 1040, which was filed with the IRS on August 27, 2007, meets the definition of a "return" under the *Beard* test, which qualifies as "applicable nonbankruptcy law" under § 523(a)(*). This Court agrees. To conclude otherwise would lead to the absurd result where § 523(a)(1)(B)(ii), which provides for the discharge of late-filed returns, is rendered meaningless by § 523(a)(*). *See Rhodes*, 498 B.R. at 366. This interpretation is also consistent with the IRC, which continues to require taxpayers to file returns, even after the Secretary prepares a Substitution of Return on that taxpayer's behalf. *Id.*

Having determined that § 523(a)(*) does not contain a bright line rule forbidding the discharge of late filed returns, Debtor urges the Court to apply the *Beard* test, which is a nonbankruptcy law way of determining what constitutes a "return" under IRC § 6011 (entitled "General requirement of return, statement, or list"). *See Mass. Dept. of Revenue v. Shek (In re Shek)*, 947 F.3d 770, 780 (11th Cir. 2020) (determining that the hanging paragraph does not define "return" by reference to the filing's timeliness). The Court agrees that the *Beard* test is an appropriate nonbankruptcy law test to apply where, as here, a bankruptcy court is considering whether a document that is not a Substitute for Return qualifies as a "return" under § 523(a)(*).

Under *Beard*, a document qualifies as a return when: (1) it purported to be a return; (2) was signed under the penalty of perjury; (3) contained information sufficient to determine tax liability; and (4) was an honest and reasonable attempt to satisfy the tax law requirements.

*Beard v. Commissioner*, 82 T.C. 766 (1984), *aff'd Beard v. Comm'r*, 793F.2d 139 (6th Cir.

1986).  In this case, the first three prongs of the test are not in dispute.

   The Court also finds that Debtor's Form 1040 satisfied the fourth prong, whether the late

filed Form 1040 qualifies as an honest and reasonable attempt to satisfy the tax law

requirements.  In so finding, the Court is persuaded by the reasoning of the Court of Appeals for

the Eighth Circuit in *Colsen*, which states: "the honesty and genuineness of the filer's attempt to

satisfy the tax laws should be determined from the face of the form itself, not from the filer's

delinquency or the reasons for it."  *In re Colsen*, 446 F.3d at 840; *see also In re Rhodes*, 498 B.R.

at 369.

   The IRS has not alleged that Debtor's Form 1040 was inaccurate, dishonest, or that the

information contained thereon was insufficient to satisfy Debtor's duty to file a return.  *See*

*Grogan v. Garner*, 498 U.S. 279, 287 (1991) (IRS has the burden of proving by a preponderance

of the evidence that it is entitled to an exception to discharge).  The evidence in this case

demonstrates the opposite—that Debtor's Form 1040 contained accurate information and was

relied upon by the IRS during and after this bankruptcy case was filed.  Debtor's Form 1040 was

accepted by the IRS and was the basis for its collection activity.  *See* Debtor's Opp., Ex. H, ECF

No. 44-13.  On the notice that the IRS sent to Debtor to inform him of the fact that his tax debt

was being sent to ConServe, the "Tax Form" the IRS relied upon for proof of the tax debt is

listed as "1040A."  *Id.*  Additionally, in the "Annual Notice of Tax Delinquency" notice that

ConServe sent to the Debtor, the "Kind of Tax" that being collected against the Debtor is listed

as "1040."  *Id.* at Ex. J.  The IRS filed a proof of claim using information it obtained from the

Form 1040 and received payment on that claim.  *See* Ch13 Trustee's Final Rpt., Ex. G, ECF No.

44-12.  For the IRS to have relied on the Debtor's Form 1040, it must have contained accurate

information and reasonably complied with tax law.  *See Beard v. Commissioner*, 82 T.C. 766

(1984).

For these reasons, the Court holds that Debtor's Form 1040 was discharged as a matter of

law in his chapter 13 bankruptcy case.

### III. Whether the IRS' and ConServe's Collection Activity Violated the Discharge Injunction?

Debtor seeks sanctions for civil contempt against the IRS and its contractor, ConServe for

the aforementioned violation of the discharge injunction.  Mot., Memo. Law at 3, ECF No. 44-4.

When a debtor receives a discharge in bankruptcy, the discharge "operates as an injunction

against the commencement or continuation of an action, the employment of process, or an act, to

collect, recover or offset any such debt as a personal liability of the debtor, whether or not

discharge of such debt is waived . . . ."  11 U.S.C. § 524(a)(2).  "Section 524 does not include an

explicit enforcement mechanism, but § 105 of the Bankruptcy Code plainly provides the

statutory authority, as the powers granted in that section authorize the courts to 'issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In

re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) (quoting 11 U.S.C. § 105).

There is no serious question that a violation of the discharge provided in § 524(a)(2) is

punishable by contempt.  *See In re Cruz*, 254 B.R. 801, 816 (Bankr.S.D.N.Y.2000) (citing

cases).  For a finding of contempt, "the burden rests with the movant to show by clear and

convincing evidence that the offending entity had knowledge[,] actual or constructive[,] of the

discharge and willfully violated it by continuing with the activity complained of."  *Torres v.

Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).  There, the

Court stated that "compensatory damages, in addition to coercive sanctions, may be awarded as a

sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction."  367 B.R.

at 490; *see also* 4 Collier on Bankruptcy ¶ 524.02[2][c] ("A creditor's actions in violation of the

discharge injunction are willful if the creditor knows the discharge has been entered and intends

the actions which violated the discharge injunction.").

In order to prove that a contempt order is warranted, the Debtor "must establish that (1)

the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to

comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

"Clear and unambiguous" with regards to the order means that the clarity of the order must be

such that it enables the enjoined party "to ascertain from the four corners of the order precisely

what acts are forbidden." *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363

(E.D.N.Y. 1998); *see N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir.

1989) (finding that the order could serve as the foundation for a contempt citation as it was

sufficiently specific and clear to enable defendants to ascertain precisely what they could and

could not do). "In the context of civil contempt, the clear and convincing standard requires

a quantum of proof adequate to demonstrate reasonable certainty that a violation occurred."

*Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir.2002) (internal quotations omitted); *see*

*also Perez v. Danbury Hospital,* 347 F.3d 419, 423–24 (2d Cir.2003) (stating that the evidence of

noncompliance with the order must be clear and convincing).

The IRS and ConServe's proof of noncompliance of the Discharge Order is clear and

convincing. After receiving notice of the Debtor's discharge, in November 2017, the IRS

contracted with ConServe to collect the Debtor's "overdue" 2002 tax debt. Mot. Ex. H. (Ltr.

from IRS), ECF No. 44-13. On November 6, 2018, ConServe sent a notice to the Debtor on

behalf of the IRS entitled "Annual Notice of Tax Delinquency." Mot. Ex. J. (Ltr. from

ConServe), ECF No. 44-15.  The notice states that it was "an annual reminder of [Debtor's] tax delinquency."  *Id.*  The total amount due, according to the notice, was $929.99 and Debtor was advised, among other things, that "[t]he balance shown on this letter, which includes accrued interest and penalties, is the amount owned as of the date of this letter."  *Id.*  ConServe sent a second "Annual Notice of Tax Delinquency on November 6, 2019.  *Id.*  The notice is a replica of the prior year's notice except that the "Total Amount Due" increased to $982.40.  *Id.*  All three of these notices are clear attempts to collect a discharged debt.

At the hearing held before the Court on April 28, 2020, the IRS argued that, even if the tax debt was discharged, the IRS was permitted to collect on the debt as Debtor did not bring an adversary proceeding to discharge these taxes.  That is not how the bankruptcy discharge works.

Under chapter 13 of the Bankruptcy Code, a debtor is required to schedule all debts and notify his creditors of his filing.  Each creditor is then permitted to file a proof of claim.  All claims are treated in the debtor's chapter 13 plan in accordance with the Bankruptcy Code.  *See* 11 U.S.C. § 1322.  "[I]f the debtor makes all required plan payments the debtor is eligible for a full compliance discharge."  *Romano v. Romano (In re Romano)*, 548 B.R. 39, 43 (Bankr. S.D.N.Y. 2016); 11 U.S.C. § 1328(a).  "The opportunity for a creditor to participate in bankruptcy proceedings is of obvious importance" as failure to file a proof of claim, object to confirmation of a debtor's plan, or file an adversary proceeding, can bind a creditor to the treatment set forth in a debtor's plan.  *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.").  Under § 1328(a) of the Bankruptcy Code, "all debts" are discharged immediately upon

entry of the discharge order, "except any debt . . . of the kind specified in" § 523(a)(1). 11 U.S.C. § 1328(a).

Debtor does not bear the burden of demonstrating that any of his tax debt meets the exception to be discharged. The IRS bears that burden. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (stating that the creditor bears the burden of proving by a preponderance of the evidence that a debt has been excepted from discharge); *Whitehouse v. LaRoche*, 277 F.3d 568, 575 (1st Cir. 2002) ("[E]ither a debtor or a creditor may commence an adversary proceeding to determine the dischargeability *vel non* of a debt under subsection 523(a)."); *In re Olsen*, 170 B.R. 161, 165 (Bankr. D.N.D. 1994) ("[B]ankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts.").

Here, the IRS received notice of the filing and participated in the case by filing proofs of claim. *See* Claim No. 1-3. The IRS received payment on account of its claims. *See* Ch13 Trustee's Final Rpt., Ex. G, ECF No. 44-12. It also had the opportunity to raise the issue of dischargeability of these tax debts by filing an adversary proceeding. Instead of coming to this Court, filing an adversary proceeding, and asking this Court to declare that the taxes were nondischargeable, the IRS made its own determination that the debt was nondischargeable and proceeded with collection activity. It now must face the consequences of its erroneous assumption.

### IV. Whether Damages Should be Awarded?

Debtor requests an award of compensatory damages, an award of his reasonable attorney's fees in the amount of $2,640.00, and punitive damages of $10,000.00, against both the IRS and ConServe. The Debtor has not exhausted his administrative remedies so no damages may be awarded against the IRS. *See supra.* sec. I.B. The Debtor is able to pursue damages

against ConServe and is not limited by I.R.C. § 7433.[5]  *See* IRC § 7433A(b) (removing discharge

violation actions brought against contractors from § 7433; removing the requirements to exhaust

administrative remedies; and removing requirement that action under § 7433 be "an exclusive

remedy").

 "Compensatory damages, in addition to coercive sanctions, may be awarded as a

sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *Torres v.*

*Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007); *see also* 4

Collier on Bankruptcy ¶ 524.02[2][c] ("A creditor's actions in violation of the discharge

injunction are willful if the creditor knows the discharge has been entered and intends the actions

which violated the discharge injunction.").

The Court awards compensatory damages of $500.00 for each notice issued by ConServe

seeking payment from the Debtor to compensate the Debtor for the stress and emotional distress

he suffered upon learning that a creditor was attempting to collect a discharged debt.  *In re*

*Haemmerle*, 529 B.R. 17 (Bankr. E.D.N.Y. 2015) (awarding $500 per violation, where collection

letters were sent post-petition violation) (citing *In re Szenes*, 515 B.R. 1 (Bankr. E.D.N.Y.

2014)); *see also In re Wassem*, 456 B.R. 566, 573 (Bankr. M.D. Fla. 2009) (awarding damages

of $100 per phone call when a creditor attempted to collect a debt in violation of the discharge).

The Court also awards Debtor's attorney's fees as compensatory damages for having to

bring this action. Debtor's counsel submitted time records indicating fees in the amount of 1.2

hours of paralegal time at $80.00 per hour (or equal to $96.00), and 9.1 hours of attorney time at

---

[5] In its opposition to Debtor's motion, ConServe did not raise 11 U.S.C. § 106 as a defense.  Section 106(a)(3) limits
the amount of damages a bankruptcy court may award against a "government unit."  The Court finds that ConServe
is not a "government unit" under § 106 and will not apply § 106(a)(3) here.  *See* 11 U.S.C. § 101(27) ("The term
'governmental unit' means United States . . . or instrumentality of the United States . . . .); *see also In re Marcano*,
288 B.R. 324 , 333 (Bankr. S.D.N.Y. 2003) (stating that the term "instrumentality" within the term "government
unit" has been construed not to include private entities that do not perform a public function).

$280.00 per hour (or equal to $2,548.00), resulting in a total fee award of $2,644.00.  In examining these time records submitted by Debtor's counsel, the services rendered were reasonable under the totality of circumstances and are allowed.

The Court's denies Debtor's request for punitive damages in the amount of $10,000.00.

## Conclusion

For the foregoing reasons, the Court holds that both the IRS and ConServe have violated the discharge injunction by sending post-discharge collection notices to the Debtor.  The Debtor is entitled to an award of compensatory damages in the amount of $3,644.00 against ConServe. The Debtor shall submit a proposed order consistent with this Memorandum Decision.



**/s/ Cecelia G. Morris**

**Dated: June 19, 2020**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**